No. 02-094

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 249

LYNN M. EARLS,

       Plaintiff and Respondent,

   v.

CHASE BANK OF TEXAS, N.A., and
SHALOM RUBANOWITZ, Successor of Trustee,

       Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
                     In and For the County of Lewis and Clark,
                     Honorable Jeffrey M. Sherlock, Judge Presiding

COUNSEL OF RECORD:

       For Appellants:

              Quentin M. Rhoades, Sullivan, Tabaracci & Rhoades, Missoula, Montana

       For Respondent:

              Frederick F. Sherwood, Reynolds, Motl & Sherwood, Helena, Montana

                                Submitted on Briefs:  May 23, 2002

                                         Decided:  November 14, 2002

Filed:

                                         _____
                                                 Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Defendant and Appellant, Chase Bank, appeals from the First Judicial District Court's grant of summary judgment to Respondent Lynn Earls, as well as the Court's grant of an injunction against the enforcement of a deed of trust held by Chase Bank.  We affirm.

¶2    The following issues are raised on appeal:

¶3    (1)  Whether the Montana legislature's repeal of § 70-32-221(1), MCA, in October 2001 precluded the District Court from asserting subject matter jurisdiction over Earls' declaratory judgment action;

¶4    (2) Whether Saxon Mortgage, Inc., was required, as a regulated lender, to secure from Earls a signed, written acknowledgment that her home, which was encumbered under a deed of trust, was not exempt from execution or forced sale as a homestead; and

¶5    (3) Whether Saxon's failure to comply with this statutory requirement rendered the deed of trust, which Saxon subsequently assigned to Chase Bank, invalid and unenforceable.

FACTUAL AND PROCEDURAL BACKGROUND

¶6    On April 1, 1999, Earls borrowed $108,000 from Saxon Mortgage, Inc., pursuant to an adjustable rate note, to refinance a purchase money loan encumbering her home.  To secure the loan, Earls executed and delivered to Saxon a trust indenture encumbering her property.  Prior to closing, Saxon failed to secure from Earls an acknowledgment of notice pursuant to § 70-32-221(1), MCA.  This statute, which the Montana legislature subsequently repealed, directed lenders to obtain signed, written acknowledgments from borrowers that their property, which would otherwise qualify for the homestead exemption, was not exempt from

2

execution or forced sale. At that time, Earls had not yet filed or recorded a homestead declaration.

¶7     Saxon later assigned the deed of trust to Chase Bank. In July 2000, Earls defaulted on her note by failing to pay amounts owed, and Chase Bank attempted to foreclose its security interest through a trustee's sale of Earls' home. In response, Earls filed a Verified Complaint for Declaratory Judgment and Injunctive Relief in the First Judicial District Court, seeking a determination that the bank's deed of trust was invalid and unenforceable because Saxon Mortgage, Inc., had failed to secure from Earls an acknowledgment of notice. Earls also requested that the District Court enjoin the bank from foreclosing and selling the home to satisfy the bank's deed of trust. In turn, the bank filed an answer and its own summary judgment motion. The District Court granted Earls' motion, and enjoined Chase Bank from enforcing its security interest.

## STANDARD OF REVIEW

¶8     Our standard of review of a trial court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. *See also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; *Steer, Inc. v. Dep't of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

DISCUSSION

I

¶9      We first address the issue of whether the Montana legislature's repeal of § 70-32-221(1), MCA, in October 2001 precluded the District Court from asserting subject matter jurisdiction over Earls' declaratory judgment action.

¶10     In her Complaint, and on appeal, Earls argues that because Saxon Mortgage, Inc., failed to secure an acknowledgment of notice under § 70-32-221(1), MCA, the deed of trust which she executed to Saxon was void *ab initio* and cannot be enforced by Chase Bank. Earls bases this conclusion on her presumption that § 70-32-221(1), MCA, became a part of the contract which she entered into with Saxon. The bank argues that the repeal of § 70-32-221(1), MCA, prior to the entry of a final judgment by the District Court, deprived that court of its subject matter jurisdiction. The bank cites *First Nat'l Bank of Plains v. Barto* (1925), 72 Mont. 437, 233 P. 963 (overruled on other grounds by *Continental Supply Co. v. Abell* (1933), 95 Mont. 148, 166, 24 P.2d 133, 138), for the proposition that "when a statute . . . is repealed without a saving clause, it must be considered, except as to proceedings past and closed, as if it had never existed." *Barto*, 72 Mont. at 437, 233 P. at 964. The bank concludes that the matter should be remanded to the District Court with instructions to dismiss Earls' Complaint with prejudice.

¶11     With regard to the language of *Barto*, it is important to note that the bank overstates the relevance of that decision to the present issue. *Barto* concerned the effect of the Montana legislature's repeal of a statute that governed the duties of corporate directors. As a result of

4

the repeal, directors were released from certain statutory duties, as well as any future claims of liability based on noncompliance with those duties. In contrast, the present case concerns the effect of a statute's repeal on the validity of contracts executed prior to the repeal. Thus, the present case, unlike *Barto*, involves principles of contract interpretation– namely, whether a law existing at the time a contract is created is a part of that contract. The language of *Barto*, which is cited by Chase Bank, has little bearing here.

¶12 Instead, resolution of the present issue requires a determination of whether § 70-32-221(1), MCA, was an integral component of the contract between Earls and Saxon Mortgage, Inc. It is well established that laws existing at the time a contract is formed become part of the contract. We first articulated this principle in *Snider v. Yarbrough* (1911), 43 Mont. 203, 207, 115 P. 411, 413, stating that "parties will be presumed to have contracted with reference to the law in force." We have since noted that "'[t]he laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms'." *City of Philipsburg v. Porter* (1948), 121 Mont. 188, 193, 190 P.2d 676, 678 (citing *United States ex rel. Von Hoffman v. Quincy* (1866), 71 U.S. 535, 550, 18 L.Ed. 403, 4 Wall 535). Similarly, in *Neel v. First Federal Savings and Loan, Assoc. of Great Falls* (1984), 207 Mont. 376, 386, 675 P.2d 96, 102, we concluded that "[l]aws existing at the date a contract is executed are as much a part of the contract as if set forth therein."

¶13 The statutory acknowledgment of notice requirement was in effect when Earls transferred her deed of trust to Saxon Mortgage, Inc., in April 1999. Affirming the general

rule that a law existing at the time of a contract's formation is a part of the contract, we conclude that § 70-32-221(1), MCA, was incorporated into the trust indenture between Earls and Saxon Mortgage, Inc., and continues to govern the present action irrespective of the statute's repeal during the District Court proceedings.

## II

¶14 We next address the issue of whether, under § 70-32-221(1), MCA, Saxon Mortgage, Inc., was required to secure from Earls an acknowledgment that her home, which was encumbered under the deed of trust held by Saxon, was not exempt from execution or forced sale.

¶15 Chase Bank argues that Earls' home did not qualify as a homestead because she failed to file and record a homestead declaration before executing the deed of trust to Saxon Mortgage, Inc. The bank further asserts that without a pre-existing homestead declaration, the homestead exemption laws, including § 70-32-221(1), MCA, would not apply to the transaction between Earls and Saxon. The bank, therefore, concludes that Saxon was relieved from its duty to secure from Earls an acknowledgment of notice.

¶16 The strength of the bank's argument necessarily turns on the accuracy of the bank's interpretation of § 70-32-221(1), MCA. Prior to its repeal in 2001, § 70-32-221(1), MCA, provided:

> [i]f a borrower borrowing money from a regulated lender . . . encumbers real property that otherwise would qualify as a homestead under Title 70, chapter 32, the lender shall require the borrower to sign a written statement acknowledging that the real property is not exempt from execution or forced sale as a homestead because under § 70-32-202 it is subject to execution or forced sale

6

to satisfy a judgment obtained on a debt secured by a mortgage or other encumbrance on the premises . . . .

Section 70-32-202, MCA, provides:

> [t]he homestead is subject to execution or forced sale in satisfaction of judgments obtained: (1) on debts secured by construction or vendors' liens upon the premises; (2) on debts secured by mortgages on the premises, executed and acknowledged by the husband and wife or by an unmarried claimant; or (3) on debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record.

In other words, while the homestead exemption protects qualifying property from execution or forced sale in satisfaction of a judgment, § 70-32-221(1), MCA, while effective, charged lenders with the obligation of ensuring that borrowers were fully aware that by encumbering property which would otherwise be exempt from execution or forced sale, they were waiving the protections of the homestead exemption statute.

¶17 Construing § 70-32-221(1), MCA, the District Court determined that "the clear language of [the statute] does not require the pre-existing creation of a homestead by the debtor . . . . The statute does not talk about property that qualifies for a homestead, but property that 'otherwise would qualify' as a homestead." (Citation omitted.) The court added that "to adopt Defendants' interpretation of the statute would render it somewhat unusable and without impact since it would be impossible for a purchase money mortgagor, for example, to have already have created a homestead prior to obtaining the financing to purchase a house." (Citation omitted.)

¶18 We agree with the District Court's construction of § 70-32-221(1), MCA, and reject Chase Bank's more narrow interpretation. The statute is not limited to those transactions

7

between lenders and borrowers in which homestead declarations are pre-existing. By its own terms, § 70-32-221(1), MCA, extends to transactions in which the borrower's property *qualifies* for the homestead exemption even though the borrower has not actually filed a declaration of homestead. Property that qualifies as a homestead includes "the dwelling house or mobile home, and all appurtenances, in which the claimant resides and the land, if any, on which the same is situated . . . ." Section 70-32-101, MCA. Earls' home served as her residence in Lewis and Clark County and qualified as a homestead at the time she executed the deed of trust to Saxon Mortgage, Inc. Since Earls' home qualified for the exemption, the transaction with Saxon was subject to the acknowledgment of notice requirement of § 70-32-221(1), MCA, and, therefore, we conclude that Saxon was bound by its terms. When Saxon received the deed of trust from Earls, it should have secured from Earls a signed, written acknowledgment that her home was not exempt from execution or forced sale under the homestead exemption law.

III

¶19 Finally, we consider the effect of Saxon Mortgage, Inc.'s, failure to comply with § 70-32-221(1), MCA, and determine what remedy is available to Earls as a result.

¶20 Chase Bank argues that Earls is entitled only to compensation for her actual damages which, according to the bank, are limited to the harm Earls can prove was proximately caused by Saxon's failure to comply with § 70-32-221(1), MCA. According to the bank, the deed of trust given to Saxon Mortgage, Inc., is not voidable because the object of the contract, itself, was not unlawful. In response, Earls argues that compliance with the statute was an absolute

8

requirement, and that due to Saxon's noncompliance, the trust indenture was void *ab initio* and unenforceable by the bank.

¶21 *Mueske v. Piper, Jaffray & Hopwood, Inc.* (1993), 260 Mont. 207, 859 P.2d 444, involved a similar question of how to characterize and apply arbitration rules which were incorporated by reference into an arbitration agreement between an investor and a brokerage firm. The issue in that case was whether a clause in the arbitration agreement, directing the firm to provide its clients with a copy of the agreement, required strict compliance by the parties. *Mueske*, 260 Mont. at 211, 859 P.2d at 446. The firm argued that the rule, which was established by the National Association of Securities Dealers, Inc. (NASD), controlled only the arbitration process and not the validity of the agreement itself. *Mueske*, 260 Mont. at 212, 859 P.2d at 447. We rejected this theory and affirmed the trial court's holding that compliance with the rule was a condition precedent to the validity of the arbitration agreement. *Mueske*, 260 Mont. at 216, 859 P.2d at 450. We held that the NASD rules were incorporated into the arbitration agreement as controlling law and, therefore, noncompliance rendered the agreement invalid. *Mueske*, 260 Mont. at 216, 859 P.2d at 450.

¶22 *Mueske* is instructive in the present case, where we are asked to determine whether noncompliance with the statutory acknowledgment of notice requirement, which we have concluded was an integral component of the trust indenture between Earls and Saxon Mortgage, Inc., rendered that contract invalid. The holding in *Mueske* was based, in part, on a public policy that favors disclosure rules in arbitration agreements. The purpose of the rule was to protect investors by "improv[ing] disclosure . . . in account opening agreements . . . ."

9

*Mueske*, 260 Mont. at 214, 859 P.2d at 448. Similarly, the acknowledgment of notice requirement of § 70-32-221(1), MCA, was intended to protect less sophisticated borrowers. The legislative history of § 70-32-221(1), MCA, indicates that the Montana legislature intended the statute as a tool for preventing borrowers from unwittingly encumbering property that would otherwise qualify as exempt from execution or forced sale under Montana's homestead exemption law. This conclusion is supported by the minutes of House and Senate committee meetings which, as interpreted by the District Court, suggest that members understood that the effect of noncompliance with the statute by a lien holder would result in the unenforceability of the lien. In response to questions about the practical effect of the statute, representatives heard testimony suggesting that the failure of a mortgagee to secure a signed, written acknowledgment of nonexemption from a mortgagor would prevent the mortgagee from enforcing its mortgage against the mortgagor's homestead. *Requiring Mortgagor Acknowledge Mortgaged Property not Exempt as Homestead*, 50th Legis. Sess. 17 (Mont. 1987) (statement of George Bennett, representative of the Montana Bankers Association).

¶23    The legislative history of § 70-32-221(1), MCA, is consistent with the general intent of the homestead exemption scheme, as articulated by this Court in *Neel*. Explaining the theory of the homestead exemption, we stated that "[t]he purpose of the framers of the law was to secure a home beyond the reach of financial misfortune, around which gather the affections of the family; the greatest incentive to virtue, honor and industry." *Neel*, 207 Mont. at 387, 675 P.2d at 102. Section 70-32-221(1), MCA, was intended to safeguard this

10

objective by ensuring that borrowers remain informed about the nature and consequences of their real estate financing contracts. It follows that, prior to its repeal, the statutory acknowledgment of notice requirement demanded strict compliance.

¶24 Given the legislature's intent, we agree with the District Court that § 70-32-221(1), MCA, controlled the circumstances of the trust indenture between Earls and Saxon Mortgage, Inc., and was an integral component of that transaction. Clearly, the terms of § 70-32-221(1), MCA, were incorporated into the trust indenture between Earls and Saxon as a condition precedent to the contract's validity. Therefore, we conclude that because Saxon failed to comply with Montana law when it received the deed of trust from Earls, the deed became void *ab initio* and unenforceable by its subsequent holder, Chase Bank.

## CONCLUSION

¶25 In summary, we affirm the District Court's grant of summary judgment to Earls on her claim for declaratory judgment. We also affirm the District Court's conclusion that the deed of trust held by Chase Bank is unenforceable.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER

11